1              UNITED STATES DISTRICT COURT
             DISTRICT OF NEW HAMPSHIRE
2

   * * * * * * * * * * * * * * * *
3  NEW HAMPSHIRE LOTTERY                  *
   COMMISSION, NEOPOLLARD                 *
4  INTERACTIVE, LLC AND POLLARD           *
   BANKNOTE LIMITED,                      *
5                                         *
                      Plaintiffs.         *
6                                         *
   vs.                                    *  No. 1:19-cv-00163-PB
7                                         *  Friday, February 22, 2019
   WILLIAM BARR, IN HIS OFFICIAL          *  11:08 a.m.
8  CAPACITY AS ATTORNEY GENERAL,          *
   UNITED STATES DEPARTMENT OF            *
9  JUSTICE AND UNITED STATES OF           *
   AMERICA,                               *
10                                        *
                      Defendants.         *
11                                        *
   iDEVELOPMENT AND ECONOMIC              *
12 ASSOCIATION,                           *
                                          *
13                    Intervenor.         *
   * * * * * * * * * * * * * * * *
14
             IN CHAMBERS TELEPHONE CONFERENCE
15       BEFORE THE HONORABLE PAUL J. BARBADORO

16
   APPEARANCES:
17
   For the Plaintiff:       Anthony Galdieri, Esq. (NHAG)
18 NH Lottery Commission    Francis Charles Fredericks, Esq.
                            Office of the Attorney General (NH)
19
   For the Plaintiff:       Matthew D. McGill, Esq.
20 NeoPollard Interactive   Gibson Dunn & Crutcher LLP
   Pollard Banknote                  - and -
21                          Nicholas F. Casolaro, Esq.
                            McLane Middleton
22
   For the Defendant:       Steven A. Myers, Esq.
23 U.S. Attorney General    US Dept of Justice - Civil/Com'l
   U.S. Dept of Justice     Litigation - Washington, DC 20530
24 U.S. Dept. Of Justice            - and -
   U.S.A:                   T. David Plourde, AUSA
25                          U.S. Attorney's Office- NH

1

2      <u>Court Reporter</u>:            Brenda K. Hancock, RMR, CRR
                                         Official Court Reporter
                                         United States District Court
3                                        55 Pleasant Street
                                         Concord, NH 03301
4                                        (603) 225-1454

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE COURT:  Good morning.  This is Judge Barbadoro.  I

3   have my law clerks, my Courtroom Deputy and a court reporter

4   here.  I would ask you the first time you speak if you would

5   identify yourself so that the reporter can figure out who it is

6   that's speaking.

7          I think I'll start by addressing the related-case

8   issue.  I received notice yesterday that an apparently related

9   case had been filed and preliminarily assigned to Judge

10  McAuliffe.  I reviewed the Complaint.  It does appear to be a

11  related case to me, consulted with Judge McAuliffe, and,

12  pursuant to our local practice, the consolidated cases are

13  assigned to the Judge with the first-filed case, which would be

14  me.

15         I'd like to hear whether anyone has any objection to

16  treating these two cases as related cases for purposes of case

17  management.

18         MR. McGILL:  Good morning, your Honor.  This is

19  Matthew McGill of Gibson, Dunn & Crutcher, and I represent the

20  plaintiffs in the NeoPollard action assigned to

21  Judge McAuliffe, and we do not object to consolidation.

22         THE COURT:  All right.

23         MR. PLOURDE:  Your Honor, Dave Plourde,

24  U.S. Attorney's Office.

25         THE COURT:  Yes.

1        MR. PLOURDE:  I just want to introduce Steve

2   Myer [sic] from the Federal Programs Branch, who will be

3   addressing the Court.

4        THE COURT:  All right.  Mr. Myer, what's the

5   Government's position?

6        MR. MYERS:  Good morning, your Honor.  Steven Myers,

7   actually.  I'm from the Justice Department in D.C., and we

8   likewise do not object to consolidation.

9        THE COURT:  All right.  How about the Commission?  Any

10   problem with treating these as consolidated matters?

11        MR. GALDIERI:  Your Honor, this is Anthony Galdieri

12   from the New Hampshire Attorney General's Office on behalf of

13   the Commission, and we have no objection.

14        THE COURT:  All right.  So, good.  So, I will handle

15   both cases.  I don't usually intervene this early in a case's

16   history with the Court, but because both cases requested

17   expedited treatment, and because Motions for Summary Judgment

18   were filed by the plaintiff when the Complaints were filed, I

19   thought it was important that we speak right away, and I would

20   like to hear from each party as to how you would like to

21   proceed and see if we can agree on a plan of action at least

22   for the first few weeks of the case.

23        Let me start with the Commission and ask for your

24   views, then I'll turn to NeoPollard, and then ask for the

25   United States's position.

1          MR. GALDIERI:  Sure, your Honor.  This is Anthony

2     Galdieri for the Commission.  We think this case needs to

3     proceed on an expedited basis.  Ideally, we would need a

4     judgment in this case by April 15th, when the U.S. DOJ's sort

5     of 90-day grace period for not prosecuting conduct under their

6     new interpretation of the Wire Act will ultimately expire.  We

7     believe that the questions, the substantive questions presented

8     are pure legal questions that can be reached on a Motion for

9     Summary Judgment, and we think that's the appropriate vehicle

10     to have these briefed and resolved on an expedited basis.

11          We have particular concerns.  The Commission needs to

12     know whether and to what extent its activities may be illegal,

13     and if it has to cease one or more or all of them, and the

14     State -- it's an important issue for the State, given the

15     budget process that we're in, and the State needs to know

16     whether in creating the budget it can rely on revenues

17     generated by the State Lottery.

18          THE COURT:  All right.  So, let me make sure I

19     understand your position.  You don't believe any discovery is

20     necessary; you believe the appropriate way to resolve the case

21     is on cross motions for summary judgment; and you believe that

22     there is an urgent need for me to resolve the matter because

23     you face what you think is an imminent threat of prosecution at

24     any point after the expiration of the grace period.

25          Do I have that right?

1          MR. McGILL:  That's correct, your Honor.

2          THE COURT:  Okay.  How about NeoPollard's position?

3          MR. McGILL:  Good morning, your Honor.  It's Matt

4    McGill for NeoPollard.  We agree with the Lottery Commission

5    that this is an urgent matter.

6          As your Honor knows, the Deputy Attorney General has

7    transmitted a memorandum to all U.S. Attorneys and to the FBI

8    saying that as of April 15th this conduct can be prosecuted

9    under the Wire Act, and the Deputy Attorney General's

10   memorandum further states that, if this is just an exercise of

11   prosecutorial discretion, quote, it is not a safe harbor for

12   violations of the Wire Act, end quote.

13         We, in our motion for speedy hearing, your Honor,

14   suggested that the Attorney General be required to respond

15   within 30 days of service of our Motion for Summary Judgment.

16   That, we believe, is ample time for them to brief the issues in

17   this case, and that would enable the Court not a lot of time

18   but some time to reach a judgment before April 15 and thereby

19   end the threat of prosecution that my clients will face as of

20   that date.

21         THE COURT:  All right.  So, again, you're completely

22   in line with the Commission on this cross motions for summary

23   judgment, expedited briefing and resolution schedule; you face

24   an imminent threat of prosecution unless I resolve the matter

25   within the grace period.  Do I have that right?

1          MR. McGILL:  That's correct, your Honor.  My only

2     amendment to that would be, obviously, if the Justice

3     Department were to extend that 90-day window, that would

4     perhaps relieve some of the most intense urgency.

5          THE COURT:  Okay.  Well, obviously, I would like to --

6     I can inform the parties I can commit to resolving this matter

7     on an expedited basis, but typically I would like to have some

8     time after oral argument to write a decision.  I need a minimum

9     of 30 days after an oral argument, and I'm confident I could

10    resolve it no later than 90 days after oral argument, but it's

11    not optimum for me to be put into a position where someone's

12    asking me to release a written decision analyzing a challenging

13    statutory construction problem on a faster schedule than that.

14         So, the best thing for me is if the government would

15    simply agree to forebear from prosecution of these entities,

16    and I will commit to doing -- making an expedited -- reaching

17    an expedited resolution.

18         But let me hear what the government thinks.

19         MR. MYERS:  Good morning again, your Honor.  Steven

20    Myers from the Justice Department.  We generally agree that

21    this case raises exclusively legal issues and is susceptible to

22    resolution on cross-motions.  With respect to the proposal that

23    the plaintiffs have made, we would note that those proposals

24    don't build in a cross-motion for the government, and it's

25    certainly our intention to cross-move, whether that's for

1   summary judgment or to dismiss.  And so, whatever schedule we

2   reach we would like to build that in and include a reply brief

3   for the government.

4           I was prepared to say today that we are prepared to

5   file our brief on March 15th, our first brief, as plaintiffs

6   have requested.  But to your Honor's question as to whether the

7   government can agree to not prosecute the plaintiffs here,

8   certainly I don't have authority to make that representation

9   today, and that's, as I understand it, not a representation the

10  government is typically able to make.  So, again, for purposes,

11  certainly, of today's call, I'm not in a position to make that

12  representation.

13          THE COURT:  Well, all right.  So, do you want me to

14  order you not to do that and we'll go from there, and you could

15  appeal my decision and see how that works out?  I would like to

16  get this decided correctly, and I assume you would like me to

17  decide it correctly, and I would imagine you would understand

18  that I would need to have a little bit of time to resolve it

19  correctly.

20          MR. MYERS:  I understand, your Honor.  Again, I don't

21  have authority to make the representation that you're asking

22  for; nor do I think that I can consent to what would

23  effectively be an entry of a TRO or a PI against us when

24  plaintiffs haven't sought that relief.  With that said, we are

25  prepared to brief this issue on the expedited schedule

1    essentially the plaintiffs have asked for.

2         THE COURT:  All right.  Do the plaintiffs want to

3    amend their complaint to seek a temporary retraining order or

4    preliminary injunction to protect you from prosecution during

5    the 30 days or so that it takes me to come up with a written

6    decision?

7         MR. GALDIERI:  This is the Commission, your Honor,

8    Anthony Galdieri.  Yes, we would.

9         THE COURT:  Yeah.  I mean, I hope we wouldn't have to

10   get to that point.  That seems silly to me, but if that's what

11   we have to do, I guess that's what we have to do.

12        All right.  Well, I'm disappointed that the United

13   States takes that position, which strikes me as absurd,

14   frankly, but you're entitled to take whatever positions you

15   want to take.  We'll see how it plays out.

16        Okay.  Well, the government made some reference to a

17   motion to dismiss.  What are you thinking about?

18        MR. MYERS:  Well, your Honor, certainly, you know,

19   putting everything else aside, obviously we take the opposite

20   interpretation of the statute than the plaintiffs do, and so we

21   think those arguments would be appropriately presented in a

22   12(b)(6) motion.  We're also looking at what other threshold

23   defenses we have, some of which would be jurisdictional, some

24   of which might relate to violations of the action with respect

25   to the APA claims that plaintiffs have brought.  We're looking

1     into all of that, and I need to caveat this with the fact that

2     in our office we've had this case for about 24 hours, so we're

3     still really getting up to speed, but we do anticipate making

4     some threshold arguments in addition to our statutory

5     arguments.

6            THE COURT:  Well, how do you expect me to resolve

7     those while you're threatening to prosecute the plaintiffs in

8     this action?  I can't possibly --

9            MR. MYERS:  Your Honor, I just want to be clear.

10           THE COURT:  Wait a minute, please.  Wait a minute.  I

11     can't possibly resolve this case -- if you're going to want to

12     litigate threshold motions to dismiss and then cross motions

13     for summary judgment I can't possibly resolve the case within

14     the grace period, can I?  How could I possibly do that?

15           MR. MYERS:  Your Honor, just to be clear, we would be

16     prepared to file one set of motions on this, and I don't know

17     if we caption that under Rule 12 or Rule 56, but I'm not asking

18     for two bites at the apple.  We would just like to file at

19     least one motion of our own that asserts our defenses, again,

20     such that a reply brief could be built into the schedule.

21           THE COURT:  Well, I recognized that right from the

22     outset when I suggested cross motions for summary judgment.  I,

23     of course, understand that you want to challenge the

24     plaintiffs' position, and you're arguing that you're entitled

25     to judgment as a matter of law.  But to suggest that we're

1    going to do Rule 12 motions, litigate those and then do Rule 56

2    motions, that would be a ridiculous waste of time.

3           MR. MYERS:  And just to be clear, your Honor, that is

4    not our proposal.  We're not asking for two motions.  We would

5    just like the chance to file one.  And I appreciate that your

6    Honor is contemplating that.  That was not obvious, at least

7    from plaintiffs' submissions.  But that is what we are prepared

8    to agree to do, is to resolve on an expedited basis our motion

9    and plaintiffs' motions.

10          THE COURT:  Who is it that you need to consult with to

11   obtain authority to agree for a very brief period of time not

12   to prosecute a state entity so that the Judge who has the case

13   can issue a thoughtful decision?  Who do you need to get that

14   -- who can give you that authority?

15          MR. MYERS:  Your Honor, I would have to find out the

16   answer to that question, but I suspect it would involve

17   multiple leadership offices within the Justice Department.

18          THE COURT:  Okay.  Well, I'm directing you to find out

19   that answer and to report back to me as to what the answer is,

20   because I'm requesting that the United States agree to do that,

21   and if the United States does not agree to do that, I will

22   direct the plaintiffs to file the appropriate motions for

23   preliminary relief, and we will have to address that, because I

24   think that it's going to be very challenging for me to commit

25   to resolving this matter before the end of the grace period,

1    and I can do it with a ruling from the Bench on a motion for

2    preliminary relief, and then I can take the time I need to

3    write the decision, if that's the position you'll put me in.  I

4    think that's a very unwise thing for you to do.

5           But I am going to direct you to consult with those

6    people that you need to consult with in order to take a

7    position as to whether the government will or will not agree to

8    a brief extension, and when you seek that authority I'm

9    instructing you to make clear to your superiors that the Judge

10   assigned to the case has made a commitment to resolve this

11   matter on a high-priority basis, and that all that I'm seeking

12   is an agreement for a very limited period of time after the

13   expiration of the period where you've agreed already not to

14   prosecute to make sure that I can issue a written decision that

15   can be a strong basis for appeal by whichever side loses.

16   That's all I'm trying to do.

17          So, I'm going to direct you to do that and report back

18   to me as to what the government's position is.  If the

19   government is not willing to agree, then I'm going to direct

20   the plaintiffs to file a motion seeking interim relief so that

21   the Judge assigned to the case has sufficient time to make a

22   reasoned and thoughtful analysis of the issues presented in the

23   case.

24          All right.  So, let's assume that we are going to go

25   with one set of motions.  The way I would like to work is to

1    have cross-motions filed, but I would like to have only one set

2    of briefs at least by side.  So, my thought would be to allow

3    the plaintiffs to -- they have filed their motions for summary

4    judgment -- and allow the United States to file its motion for

5    summary judgment, and to the extent it has jurisdictional

6    arguments it would make those in its motion, but that we would

7    have a memorandum in support of the plaintiffs' position, a

8    memorandum in support of the government's position and an

9    opposition to the plaintiffs' position and a reply from the

10   plaintiffs, and then we schedule the matter for oral argument,

11   rather than you -- I don't like when we have cross-motions to

12   have the government file an objection to the plaintiffs' motion

13   and then file their own memorandum in support of their own

14   motion.  The filings get very confusing.  So, what I'm

15   suggesting is that you meet and confer and agree on a briefing

16   schedule that allows for the filing of a cross-motion but that

17   only has one set of briefs.

18          Let me start with the Commission.  Do you understand

19   what it is I'm saying?  Have I made myself sufficiently clear

20   that you feel you understand what I'm saying?

21          MR. GALDIERI:  I understand what you're saying in

22   terms of preferring one set of briefs.  I'm not sure I

23   understand all the mechanics of it, but I think we're okay with

24   it.

25          THE COURT:  So, let me try to explain it further.

1    You've already filed a motion for summary judgment and a

2    memorandum in support, right?

3              MR. GALDIERI:  Right.

4              THE COURT:  Okay.  We would adopt a schedule that

5    gives the government time to file a cross-motion, and the

6    government would file one memorandum in support of its motion

7    for summary judgment and an opposition to your motion for

8    summary judgment.  You would then file a reply to the

9    memorandum that the United States has filed, and that would be

10   the briefing on your summary judgment motion.  And we would do

11   the same thing for NeoPollard.  So, I would only have a

12   memorandum, one memorandum filed by the Commission, one

13   memorandum filed by the United States, one reply filed by the

14   Commission, and if the United States felt a need to do this, I

15   could allow for a sur-reply by the United States; but, given

16   the need to resolve the matter quickly, the United States may

17   not want to do that.  But that would be the briefing -- that

18   would be one set of briefs.

19              And then one of the things I wanted to ask you was

20   whether the Commission and NeoPollard could brief their case

21   together or not.  But let's assume you can't.  Then we would do

22   the same thing with NeoPollard.  NeoPollard has filed a motion

23   for summary judgment and supporting memorandum.  The United

24   States would file an objection and cross-motion and one

25   memorandum in support of that objection and cross-motion,

1    NeoPollard would file a reply, and then we would schedule both

2    cases for oral argument.  That's what I'm thinking would be

3    most helpful to me.

4         Let me ask, so, as I've explained it further, does the

5    Commission have any problem with that kind of approach?

6         MR. GALDIERI:  No, your Honor.  That makes sense.

7         THE COURT:  All right.  How about NeoPollard?

8         MR. McGILL:  Your Honor, your approach is fine with

9    us.  I'm confident that we can work with Mr. Myers to come up

10   with a joint proposal for your Honor to consider.  My one

11   question is on what date would the Court like the briefing to

12   be closed?  Because we'll work backwards from that date in

13   creating our deadlines.

14        THE COURT:  Well, when is the expiration of the grace

15   period?

16        MR. McGILL:  April 15th, your Honor.

17        THE COURT:  Yeah, I mean, if I'm going to end up

18   having to decide the case by April 15th, then I'm going to have

19   to insist on a much more expedited briefing schedule, like

20   having the government file its memorandum next week and things

21   like that, because I'm going to insist that I have sufficient

22   time to thoughtfully resolve the matter.  So, a lot depends on

23   whether the government is willing to take what strikes me as a

24   very reasonable position and agree to simply forebear from

25   prosecuting these entities for a short period of time while I

1  decide -- that I need to decide the case.  But if the

2  Government's not willing to do that, then I might have to move

3  the briefing schedule up so that you have a matter of days

4  rather than weeks to get your briefing in.  And a lot will

5  depend on what the government wants to do.

6         So, I'm not proposing at the present time to set the

7  schedules.  I'm just trying to explain to you what would work

8  well for me.  What I propose to do is have all of you meet and

9  confer and propose a schedule to me after this conference call.

10        Okay.  So, does the government understand what it is

11  I'm thinking about for briefing?

12        MR. MYERS:  Your Honor, I think the government

13  generally does, although, if I could clarify, I think your

14  Honor made reference to a potential sur-reply for the

15  government, and I just want to make sure I understand that it

16  seems to me that the government would be filing a reply brief

17  in support of its cross-motion for summary judgment, as opposed

18  to a sur-reply, and it seems to us that would be appropriate

19  for us to do that, and I just want to make sure that we

20  understand the Court correctly in that regard.

21        THE COURT:  Yeah.  Well, to the extent you're

22  responding to the memorandum filed by the plaintiff, you would

23  be objecting, they would be replying, and you would be

24  sur-replying.  Do you see what I'm saying?

25        MR. MYERS:  I think in part, your Honor, yes.

1          THE COURT:  To the extent you're filing a

2     cross-motion, your memorandum would be in support of your

3     motion; their reply would be an objection; and your what I

4     called your "sur-reply" would be your reply.  So, it's just a

5     matter of characterization.

6          I was simply suggesting to you, if you felt the need

7     to file two briefs rather than one, I'm open to having you do

8     that.  What I do not want is you file a memorandum objecting to

9     the plaintiffs' motion for summary judgment, you file a

10    cross-motion, you file a separate memorandum in support of your

11    motion for summary judgment, and everybody files responsive

12    briefs to those two things.

13         MR. MYERS:  Of course, your Honor.

14         THE COURT:  I don't want to see that as something I've

15    seen in a number of cases where there are cross-motions filed.

16    That's what I'm concerned about.

17         Okay.  Well, that's my preference.  So, what I'd like

18    you to attempt to agree on is a schedule for briefing this

19    matter on cross-motions for summary judgment, and that that

20    schedule should allow for time for the United States to file

21    its own motion for summary judgment with respect to each of the

22    complaints, and that there should be one principal brief filed

23    by each side and then a reply or sur-reply brief, and that that

24    would be it in terms of the briefing.  So, you would go and

25    develop a schedule for briefing the matter in that way.

1          I do have a question, though.  I agree that from just

2    scanning the complaint that this appears to be a matter that

3    primarily involves a question of law, but I think so that the

4    record would be sufficiently developed for an appellate court

5    to be able to review the record, I'm wondering whether we

6    should have a stipulated set of undisputed material facts for

7    purposes of resolving the motion.  Does anyone have any

8    reaction to that?

9          MR. MYERS:  Your Honor, this is Steven Myers for the

10   government.  I think, especially given your Honor's interest in

11   moving this case quickly, it would certainly be our preference

12   just to file briefs on the legal issues.  Our view is that the

13   facts here are really quite secondary or tertiary, and we would

14   prefer to focus our energies on briefing the legal issues, and

15   we think that will be sufficient for the Court.

16         THE COURT:  Let me ask the Commission, I have only

17   scanned your Complaint, but it seems, unlike NeoPollard, you

18   are concerned that many of your lottery activities will be

19   rendered illegal under the new interpretation of the Wire Act.

20   Am I reading that correctly?

21         MR. GALDIERI:  That's correct, your Honor.

22         THE COURT:  And so, you believe that that construction

23   of the Wire Act will make illegal not just the tickets that are

24   purchased by consumers over the Internet, but it will also

25   cause your other games to be in violation of the Wire Act; is

1      that right?

2              MR. GALDIERI:  Correct.

3              THE COURT:  And your position is that -- I assume, if

4      that's the case, then all state lotteries around the country

5      are going to be in a very similar position, since I would

6      imagine it's hard to operate a lottery game without using

7      interstate wires.  Is that right or wrong?

8              MR. GALDIERI:  That's correct, your Honor.

9              THE COURT:  Okay.  It would seem to me at least

10     important potentially to sketch out what the facts are that

11     support the parties' positions with respect to those issues,

12     unless the United States is willing to tell the State of New

13     Hampshire that, "Oh, no, you're really misinterpreting our

14     opinion; we're not proposing to affect the legality of your

15     operations."  And I doubt the United States is in a position to

16     do that, but it would seem to me important to have a factual

17     foundation for this decision to know what activities are at

18     issue in this case that are potentially being rendered unlawful

19     by the new interpretation of the Wire Act.  What is the

20     Commission's position on that issue?

21             MR. GALDIERI:  So, we agree with that, your Honor.  I

22     suppose we do have a declaration of the Executive Director of

23     the New Hampshire Lottery Commission attached to our Motion for

24     Summary Judgment.  I suppose, if that went undisputed and

25     uncontested, that that may be the stipulation of facts.

1          THE COURT:  Yeah.  I haven't looked at your

2     memorandum.  As our local rule requires, do you have undisputed

3     material facts identified either in the memorandum or in a

4     separate document?

5          MR. GALDIERI:  Well, we certainly have all the factual

6     information that forms the complaint and forms sort of the

7     factual section of our memorandum of law, which are virtually

8     identical.  All that information is in Executive Director

9     McIntyre's declaration.  We didn't have it labeled as

10    undisputed, because at the time we filed we didn't know the

11    U.S. Government's position or if they would dispute it, but if

12    it sounds like they're not disputing the underlying factual

13    matters, then I suppose those are undisputed facts.

14         THE COURT:  Okay.  So, we have a local rule dealing

15    with summary judgment motions.  Let me dig it out.

16         Jen, do you know the local rule for summary judgment

17    motions?

18         THE CLERK:  I was looking that up, too.

19                    (Pause)

20         MR. GALDIERI:  There's Local Rule 56.1, Judge, but

21    that addresses just the memorandum in support of the motions.

22                    (Pause)

23         THE COURT:  Yeah.  So, "A memorandum in support of a

24    summary judgment motion shall incorporate a short and concise

25    statement of material facts, supported by appropriate record

1    citations, as to which the moving party contends there is no

2    genuine dispute to be tried."

3          Does the memorandum that you have filed incorporate a

4    short and concise statement of material facts, supported by

5    appropriate record citations, as to which you contend there is

6    no genuine dispute to be tried?

7          MR. GALDIERI:  Yes, your Honor.

8          THE COURT:  All right.  So, then when the United

9    States files its motion, in the memorandum it would file it

10   would also identify any facts that it thinks are material and

11   undisputed, and maybe the United States thinks there are no

12   facts that are necessary for the case to be resolved.  But at

13   some point the United States needs to, if it disputes the

14   plaintiffs' contention that the facts they cite are undisputed,

15   it needs to identify that.  And all I was suggesting is that

16   the two of you get together and try to agree on one set of

17   undisputed material facts, since I don't think there's likely

18   to be any real, actual dispute between you about what the facts

19   are.  But if you can't do that you can each identify in your

20   memoranda those facts that you believe are undisputed, and you

21   should also identify if you dispute any facts that the other

22   party cites as undisputed.

23         All right.  So, for the benefit of people who aren't

24   based in New Hampshire, that's Local Rule 56.1.

25         Okay.  So, I am curious.  Does the United States

1    contend that all state lottery operations are criminal

2    activities now because they necessarily involve the use of

3    interstate wires?

4             MR. MYERS:  Your Honor, the United States' position

5    that I can speak to today is really just as set out in the 2018

6    OLC opinion, and the opinion does not reach that broad

7    question; it deals only with the question of whether the

8    statute is limited to sports gambling.  I'm not in a position

9    to go beyond what the OLC opinion says.

10            THE COURT:  Well, as a matter of logic it says that

11   it's not limited to sports gambling, right?

12            MR. MYERS:  That is what it says, yeah.

13            THE COURT:  Yeah.  So, if it's not limited to sports

14   gambling and the lottery is gambling, then it covers lotteries.

15            MR. MYERS:  Again, your Honor, I'm not in a position

16   to say any more than what the OLC opinion says.

17            THE COURT:  Okay.

18            MR. MYERS:  Again, I apologize.  We have had this case

19   for a very short period of time; we're still getting up to

20   speed.  But the question that the OLC opinion deals with is

21   just the question of whether it's limited to sports gambling or

22   not.

23            THE COURT:  Okay.  All right.  So, I think we have

24   some agreement on a couple of things, at least.  It appears

25   that both sides agree that this case is susceptible to

1    resolution on cross-motions for summary judgment, and so that's

2    a good starting point.  I've explained to the parties how I

3    would like the cross-motions for summary judgment to be

4    briefed, and what I want to suggest is that the parties meet

5    and confer and within seven days file a joint proposed plan for

6    the resolution of the summary judgment motions that's

7    consistent with the discussion that we've had here today.  So,

8    you should in that schedule build in a time for the government

9    to file its own dispositive motion and time for the filing of

10   responsive memoranda.

11          If the government wants to file the way I had talked

12   about it, the plaintiffs would have a chance to file two

13   memoranda, the one they've already filed and a reply to the

14   memorandum that the United States files.  If the United States

15   feels that as a matter of fairness it should have a chance to

16   file two memoranda, I don't have any objection to doing that.

17   So, you should agree on whether that is something that you want

18   to occur, and, if so, build in the schedule for that.

19          I'm assuming the parties would like to have oral

20   argument on the motion, and I'm very willing to grant them oral

21   argument, and so what I would like you to do is to propose a

22   briefing schedule that's a joint briefing schedule that

23   addresses the timing for the filing of the government's

24   cross-motion and the filing of memoranda by both parties.

25          You can also address page limitations in there.  I'm

1    willing to grant a reasonable request to relieve you of the

2    page limitation that ordinarily applies to dispositive motion

3    under our local rule, if the parties feel that it would be

4    beneficial to file somewhat longer memoranda.  You could

5    address that in this joint scheduling plan.

6             And I would like, of course, the government to

7    represent in that memoranda what its position is on whether it

8    will agree to forebear from prosecuting these entities for

9    activities that are the subject of the current litigation for a

10   brief period of time to allow the Court to resolve the case,

11   even if that means that there's going to be a brief period

12   after the expiration of the grace period where the parties in

13   this case are not going to be prosecuted until the Court can

14   issue a decision.

15            If the government is not willing to do that, I will

16   make whatever adjustments I feel are required to the proposed

17   briefing schedule to permit me the maximum amount of time I can

18   have to consider the matter, and I will also convene a second

19   telephone conference to discuss the filing of motions for

20   temporary and preliminary relief by the plaintiffs in this

21   case.  I hope we don't have to get there, but if we do, we

22   will.

23            All right.  So, within seven days you'll file a

24   proposed plan for the resolution of the summary judgment

25   motions addressing the issues that I've talked about, and based

1    on what you file I'll make whatever decisions I need to make,

2    and, if necessary, I'll convene a second telephone conference

3    with you.

4            I want to reiterate I understand that this is an

5    important matter for the parties.  I'm prepared to give it high

6    priority and do my very best to resolve it as quickly as

7    possible.

8            What other issues would the parties like to discuss,

9    starting with the plaintiffs?  Anything from the plaintiffs?

10   No?  Okay.

11           Anything from the defendants?

12           MR. MYERS:  Thank you, your Honor.  Steven Myers.  We

13   certainly understand your Honor's order and will comply with it

14   to find out what representations we can make about forebearing

15   from prosecution.  The question I would pose is, if I find out

16   that the answer to that question is, "No," that we can't

17   make -- that we cannot make such representations, might it be

18   more efficient for the parties at that point, rather than

19   coming back to court and potentially having a separate PI

20   practice, simply to agree upon a more accelerated schedule, if

21   necessary.  And, you know, we could do that I think if we

22   understood from your Honor just how much time your Honor would

23   like from the end of briefing and argument to April 15th, and

24   so if your Honor could give us some guidance on that, perhaps

25   we could try to just propose an alternative schedule, if I find

1   out that's the case.

2        THE COURT:  Yeah, I'll impose an alternative schedule

3   on you if it isn't the case, so you don't have to worry about

4   that.  As a practical matter, I think I need a month, at a

5   minimum, but I could need longer than that, depending on how

6   difficult the problem is.  I think I need at least a month from

7   the oral argument before I reach a decision, and if you can't

8   give me that, then I guess my advice to you is start working on

9   your briefs right now, because you may have very limited time

10  available to you to do your briefing.  I think it would be a

11  silly thing for you to put yourselves in those positions, but

12  if you leave me no choice, that's the only option left to me.

13  I'm going to take the time I need to make the correct decision.

14  I feel I owe it to the parties, and I'm going to do that no

15  matter what.

16        All right.  Anything else that the parties want to

17  discuss?  Okay.  So, we'll look for your filing within the next

18  seven days, and I'll decide what action to take after reviewing

19  the filing.  Thank you very much.

20        MR. MYERS:  Thank you, your Honor.

21        MR. McGILL:  Thank you, your Honor.

22        MR. GALDIERI:  Thank you, your Honor.

23        THE COURT:  Bye, bye.

24     (WHEREUPON, the proceedings adjourned at 11:50 a.m.)

25

1                         C E R T I F I C A T E

2

3

4              I, Brenda K. Hancock, RMR, CRR and Official Court

5    Reporter of the United States District Court, do hereby certify

6    that the foregoing transcript constitutes, to the best of my

7    skill and ability, a true and accurate transcription of my

8    stenotype notes taken in the matter of *NeoPollard, et al. v.*

9    *U.S. Attorney General, et al.*, No. 1:19-cv-00163-PB.

10

11

12

13

14   Date:      2/26/19

15                              BRENDA K. HANCOCK, CRR, RMR
                               OFFICIAL COURT REPORTER
16

17

18

19

20

21

22

23

24

25