**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**New Hampshire Lottery Commission, et al.**

**v.**

**William Barr, in his official capacity as Attorney General of the United States of America, et al.**

Case No. 19-cv-163-PB
Opinion No. 2019 DNH 039

**O R D E R**

A trade association of businesses involved in the internet gambling industry has filed an emergency motion to intervene in an action challenging a recent Office of Legal Counsel ("OLC") reinterpretation of the Wire Act, which criminalizes certain gambling activities that involve the use of interstate wires. The trade association seeks to join two consolidated cases, one filed by the New Hampshire Lottery Commission ("Lottery Commission"), and the other by two businesses that contract with the Lottery Commission. Because the association's interests will be adequately represented by the present parties, I deny the motion.

**I. Background**

The relevant portion of the Wire Act of 1961, 18 U.S.C. § 1084, provides:

> Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility

> for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. § 1084(a).

In 2011, the Office of Legal Counsel announced that "interstate transmissions of wire communications that do not relate to 'a sporting event or contest,' fall outside the reach of the Wire Act." See Virginia A. Seitz, *Whether Proposals by Illinois and New York to Use the Internet and Out-of-State Transaction Processors to Sell Lottery Tickets to In-State Adults Violate the Wire Act, Memorandum Opinion for the Assistant Attorney General, Criminal Division,* U.S. Dept. Just. 1 (Sept. 20, 2011) (quoting 18 U.S.C. § 1084(a)).

In 2018, however, the OLC revisited that interpretation and determined that "the prohibitions of 18 U.S.C. § 1084(a) are not uniformly limited to gambling on sporting events or contests." See Steven A. Engel, *Reconsidering Whether the Wire Act Applies to Non-Sports Gambling, Memorandum Opinion for the Acting Assistant Attorney General, Criminal Division*, U.S. Dept. Just. 23 (Nov. 2, 2018).

On January 15, 2019, the Deputy Attorney General instructed federal prosecutors to "refrain from applying Section 1084(a) in

criminal or civil actions to persons engaged in conduct violating the Wire Act in reliance on the 2011 OLC opinion prior to the date of this memorandum, and for 90 days thereafter." See *Applicability of the Wire Act, 18 U.S.C. § 1084(a), to Non-Sports Gambling*, U.S. Dept. Just. (Jan. 15, 2019), Doc. No. 2-6. On February 28, the Deputy Attorney General extended that window through June 14, 2019. See *Additional Directive Regarding the Applicability of the Wire Act, 18 U.S.C. § 1084(a), to Non-Sports Gambling*, U.S. Dept. Just. (Feb. 28, 2019), Doc. No. 23-1.

The Lottery Commission filed a complaint and a concurrent motion for summary judgment on February 15, 2019. The Commission seeks a declaratory judgment and an order "permanently enjoining the defendants from enforcing the 2018 Opinion." See Doc. No. 21-1 at 26. Later that day, NeoPollard Interactive LLC, which "provides the technological infrastructure for New Hampshire's iLottery system," and its 50% owner, Pollard Banknote LTD (collectively "NeoPollard") also filed a complaint and a concurrent motion for summary judgment. See Doc. No. 5-1 at 8. NeoPollard seeks a judgment declaring that the Wire Act is limited to "bets or wagers . . . on a sporting event or contest." See Doc. No. 5-1 at 31. I consolidated the NeoPollard action with the Lottery Commission action on February 22, 2019. See Doc. No. 9.

On February 25, iDevelopment and Economic Association (iDEA) filed an emergency motion to intervene in this consolidated action. The association "represents the interests of nearly two dozen member-organizations from virtually every sector of the iGaming community, including operations, development, supply, technology, marketing and payment processing." Doc. No. 12-1 at 7. The proposed intervenor complaint specifies the New Hampshire-based activities of two of iDEA's members: "Worldplay Gaming Solutions and Paysafe Group provide payment-related services in connection with New Hampshire's iLottery operation." See Doc. No. 12-2 at ¶ 14. The trade association asks to intervene "for the sake of protecting its members' interests and advancing separate and distinct legal rights and interests of private parties operating outside the specific context of state lotteries." Doc. No. 12-1 at 7. Neither the consolidated plaintiffs nor the defendants object to iDEA's intervention.

## II. Analysis

Federal Rule of Civil Procedure 24(a) controls intervention as of right. That rule provides:

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its

> interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

The putative intervenor relies on Rule 24(a)(2). A party is entitled to intervene on this basis if it establishes (1) the timeliness of its motion to intervene, (2) the existence of an interest relating to the transaction that forms the basis of the pending action, (3) a realistic threat that the disposition of the action will impede its ability to protect that interest, and (4) the lack of adequate representation of its position by any existing party. R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir. 2009). Each of the four preconditions is necessary. Pub. Serv. Co. of N.H. v. Patch, 136 F.3d 197, 204 (1st Cir. 1998). "The failure to satisfy any one of them dooms intervention." Id. (citing Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 637 (1st Cir. 1989)).

The First Circuit has noted that "[t]here is no bright-line rule delineating when a motion to intervene is or is not timeous." Banco Popular de P. R. v. Greenblatt, 964 F.2d 1227, 1230 (1st Cir. 1992). "Instead, courts must decide the question on a case by case basis, examining the totality of the relevant circumstances." Id.

This motion is certainly timely, and there is no question that iDEA and its members have an interest in the interpretation

of the Wire Act. The third and fourth factors require more explanation.

An intervenor must demonstrate "a sufficient practical impairment to justify intervention under Rule 24(a)(2)." Int'l Paper Co. v. Inhabitants of Town of Jay, Me., 887 F.2d 338, 345 (1st Cir. 1989). "[U]nder certain circumstances 'the adverse impact of stare decisis standing alone may be sufficient to satisfy the practical impairment requirement." Id. at 344. But such circumstances typically involve a party claiming "an interest in the very property and very transaction that is the subject of the main action." See, e.g., Chiles v. Thornburgh, 865 F.2d 1197, 1214 (11th Cir. 1989) (finding stare decisis effect sufficient in case where detainees in Immigration and Nationality Services facility intervened in lawsuit challenging federal government's operation of that detention center).

This case does not present such circumstances. The members of iDEA are a diverse set of business entities that, for the most part, have no direct connection to the present dispute.[1] Cf. Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir.

[1] The iDEA entities that are similarly situated, WorldPlay and Paysafe, will have their positions vigorously advocated for by NeoPollard, which has almost identical interests. See Int'l Paper, 887 F.2d at 345 ("[T]he stare decisis problem is greatly lessened where there are parties already in the suit whose position on the issues is the same as the absent party's.") (internal quotation marks and citation omitted).

2004) (stare decisis risk sufficient where bank employees sought to intervene in suit against that bank alleging that company-wide policy violated federal law). Under iDEA's stare decisis theory, there is no limiting principle for intervenors to a declaratory judgment action who are attempting to challenge the interpretation of a statute. Any person or entity that could be affected by the proposed interpretation would be able to cite a possible stare decisis effect as a basis for intervention as of right. In any event, to the extent a decision from this court "might have a persuasive effect on later actions by the petitioners, the effect would be insufficient to supply the necessary practical impediment." Fox v. Tyson Foods, Inc., 519 F.3d 1298, 1304 (11th Cir. 2008).[2]

Even if the possible stare decisis effect of an adverse ruling could support intervention in this case, iDEA would not be entitled to intervene as of right because the existing plaintiffs can adequately represent iDEA's interests. "Typically, an intervenor need only make a 'minimal' showing that the representation afforded by a named party would prove

[2] Nor would the possibility of Supreme Court review alter this analysis, because "amici, like respondents, can advise the Supreme Court of missing arguments . . . [a]nd if the [State] refused to appeal from a defeat, a would-be intervenor could then seek to intervene." Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n, 197 F.3d 560, 568 (1st Cir. 1999) (citations omitted).

inadequate." B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 545 (1st Cir. 2006). That general rule is subject to two relevant exceptions. First, where "the intervenor's ultimate objective matches that of the named party, a rebuttable presumption of adequate representation applies." Id. (citing Daggett v. Comm. on Governmental Ethics & Election Practices, 172 F.3d 104, 111 (1st Cir. 1999)). Second, when a present party is a government entity, "the burden of persuasion is ratcheted upward." Patch, 136 F.3d at 207. Both exceptions apply here because the Commission is a state agency and iDEA's objectives are closely aligned with those of the plaintiffs.

The Lottery Commission, NeoPollard, and the putative intervenor seek the same ultimate objective: a declaration that the 2011 interpretation by the OLC, and not the 2018 interpretation, is the proper interpretation of the Wire Act. Both the Commission and NeoPollard argue that the Wire Act is limited to gambling on sports events, that the First Circuit has already so opined, that the text and structure of the Act support such a construction, and that the legislative history bolsters that interpretation. Although the Commission supplements those arguments with arguments that apply only to state actors, the presentation of additional arguments does not render the Commission less zealous with respect to their common

objectives. Cf. Mass. Food Ass’n v. Mass. Alcoholic Beverages Control Comm’n, 197 F.3d 560, 567 (1st Cir. 1999).

Where ultimate objectives are aligned, an intervenor can rebut the presumption of adequate representation by a showing of “adversity of interest, collusion, or nonfeasance” or similar grounds. See B. Fernández, 440 F.3d at 546 (1st Cir. 2006). No such showing has been made here. As already noted, neither plaintiff rests its argument exclusively on the treatment of state-sponsored lottery games, and iDEA does not explain how the fact that NeoPollard is “not a party to an interstate online poker agreement” would alter the disposition of this case. Accordingly, I conclude that iDEA is not entitled to intervention as a matter of right.

Under Federal Rule of Civil Procedure 24(b)(1)(B), I “may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact.” In my exercise of discretion, I “must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties’ rights.” Fed. R. Civ. P. 24(b)(3). In addition, I may consider “almost any factor rationally relevant” to the motion for permissive intervention and enjoy “very broad discretion in granting or denying the motion.” Daggett, 172 F.3d at 113.

As I have already explained, iDEA's interests will be adequately represented in this litigation. The case will be decided entirely on the papers and oral argument, relieving the parties from any need for fact discovery for which iDEA may be well-suited to assist. Cf. Mass. Food Ass'n, 197 F.3d at 567 ("This is not a case where the complaint was framed so as to require an evidentiary determination and where the would-be intervenors had information that could only be presented by their participation as parties."). Finally, this case is proceeding at an expedited pace, and should remain on schedule. Accordingly, I also deny iDEA's request for permissive intervention.

Although the Lottery Commission and NeoPollard will zealously and effectively pursue the same ultimate objective that iDEA seeks to achieve, I welcome iDEA's participation in this case. It may file a brief as an amicus, and I will grant iDEA oral argument at any dispositive motion hearing. Cf. State of Me. v. Dir., U.S. Fish & Wildlife Serv., 262 F.3d 13, 14 (1st Cir. 2001) (affirming denial of motion to intervene where district court permitted party "to participate in the litigation on an amicus-plus status"). Further, should it appear at a later stage that the plaintiffs are not adequately representing the interests of iDEA or its members, I will "revisit the matter of intervention." See id. at 21.

The emergency motion to intervene (Doc. No. 12) is denied without prejudice.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

March 8, 2019

cc: Francis C. Fredericks, Esq.
Anthony Galdieri, Esq.
Matthew D. McGill, Esq.
Michael A. Delaney, Esq.
Nicholas F. Casolaro, Esq.
Theodore B. Olson, Esq.
Steven A. Myers, Esq.
Alain J. Ifrah, Esq.
Andrew J. Silver, Esq.
Claude M. Stern, Esq.
Demetrio F. Aspiras, III, Esq.
Derek L. Shaffer, Esq.