UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

_____
|
New Hampshire Lottery Commission,   |
|
Plaintiff,   |
v.                                  |   Civil Case No. 19-cv-163-PB
|
William Barr, in his official capacity |
as Attorney General; United States  |
Department of Justice               |
|
Defendants   |
_____|

### NEW HAMPSHIRE LOTTERY COMMISSION'S SUPPLEMENTAL MEMORANDUM

On April 11, 2018, the Court requested that the New Hampshire Lottery Commission ("NHLC") brief whether and to what extent a ruling that the term "whoever" as it is used in 18 U.S.C. § 1084 does not include the State or its agencies would extend to include: (1) state officials and employees; and (2) private vendors the State may employ to facilitate State-conducted lottery activity.  The NHLC submits the following memorandum in response to that request.

**I. The Term "Whoever" As Used In Section 1084(a) Does Not Extend To The States, Their Agencies, Or Their Officials Or Employees Acting In Their Official Capacities Pursuant To Valid State Law.**

18 U.S.C. § 1084(a) prohibits "whoever" is "engaged in the business of betting or wagering" from "knowingly us[ing] a wire communication facility" to transmit or obtain transmissions of certain types of gambling information.  Section 1084 does not define the term "whoever."  However, 1 U.S.C. § 1 [Rules of Construction] provides that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the words 'person'

1

and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." "It is significant that the definition of 'whoever' in 1 U.S.C. s 1, 1 U.S.C.A. s 1 was first enacted into law as part of the very same statute which enacted into positive law the revised Criminal Code. 62 Stat. 683, 859 (1948)." *U.S. v. A&P Trucking Co.*, 358 U.S. 121, 123 n. 2 (1958). "The connection between 1 U.S.C. s 1, 1 U.S.C.A. s 1 and the Criminal Code [i.e., Title 18] . . . is thus more than a token one . . . ." *Id.*

The United States Supreme Court has recognized that the definition of the term "person" and "whoever" in 1 U.S.C. § 1 does not include the States. *See Vt. Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 782 (2000) (observing that corporations are presumptively covered by the term "person" under 1 U.S.C. § 1, while States are not). This has led the United States Supreme Court to develop and apply a longstanding interpretive presumption that the words "person" or "whoever" as used in a federal statute does not include sovereigns (like the federal government or the States), unless the context of the statute strongly indicates otherwise. *Id.* at 780-81. The presumption is a tool of interpretation used to help identify Congress's intent and "may be disregarded only upon some affirmative showing of statutory intent to the contrary." *Id.* at 781.

Because the terms "person" and "whoever" contained in 1 U.S.C. § 1 presumptively does not include the States or their sovereign agencies, it follows that those same terms do not include a state official or employee acting in his or her official capacity because such suits are "no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988); *see, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y. City Dept. of Social Servs.*, 436 U.S. 658,

690 n. 55 (1978)); *Am. Policyholders Inc. Co. v. Nyacol Products, Inc.*, 989 F.2d 1256, 1260 (1st Cir. 1993) ("even when pondering jurisdictional and quasi-jurisdictional issues, this court has consistently accepted and applied the principle that an official-capacity suit against a government officer is fully equivalent to a suit against the agency"); *Northeast Fed. Credit Union v. Neves*, 837 F.2d 531, 533 (1st Cir. 1988) ("Where, as here, all of the claims are made against a government official acting purely in a representative role, the suit must be regarded as one against the sovereign.").

Thus, in applying the longstanding interpretive presumption that the term "person" or "whoever" does not apply to the sovereign States, the United States Supreme Court has recognized that a State actor implementing valid State law functions as the State, so that the presumption extends to him. *Will*, 491 U.S. at 71. As the United States Supreme Court explained in *Will*:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

*Id.* Indeed, if Congressional intent to exclude States from a particular statutory provision could be so easily circumvented by permitting an action to be maintained against a State official or employee instead of the State itself, then there would be no long line of cases repeating the longstanding interpretive presumption.

The following cases illustrate the point. In *Al Fayed v. Central Intelligence Agency*, 229 F. 3d 272, 273 (D.C. Cir. 2000), Mohamed Al Fayed presented a request to a federal district court under 28 U.S.C. § 1782 [Assistance to Foreign and International Tribunals] that it issue and enforce a subpoena to the CIA for documents related to the automobile accident involving his

3

son and Princess Diana. "Section 1782 provides for discovery [targeting "persons"] in federal courts at the behest of foreign and international tribunals and [those] . . . interested in proceedings before such tribunals." *Al Fayed*, 229 F.3d at 273. The district court issued the subpoena, Al Fayed moved to compel compliance with it, and the CIA moved to quash it, stating that it was not a "person" from whom discovery could be sought under Section 1782. *Id.*

Applying the longstanding interpretive presumption that the term "person" does not include the sovereign, the district court agreed and declined to enforce the subpoena. *Id.* The United States Court of Appeals for the District of Columbia affirmed the district court's judgment on the same grounds. *Id.* at 274-77. In holding that the term "person" in Section 1782 did not apply to the CIA, neither the district court nor the circuit court suggested that if only the subpoena had named the CIA's director, or another employee with access to documents, then the subpoena could have been enforced under Section 1782.

To the contrary, in applying *Al Fayed*, the United States Court of Appeals for the District of Columbia found that process directed at a government official to compel him to take action is no different than process against the sovereign itself:

> ORDERED that the motion for summary affirmance be granted. The merits of the parties' positions are so clear as to warrant summary action. *See Taxpayers Watchdog, Inc. v. Stanley,* 819 F.2d 294, 297 (D.C.Cir.1987) (per curiam); *Walker v. Washington,* 627 F.2d 541, 545 (D.C.Cir.) (per curiam), *cert. denied,* 449 U.S. 994 (1980). A complaint seeking to compel action by a federal official in his or her official capacity is actually a complaint against the United States. *Dugan v. Rank,* 372 U.S. 609, 620 (1963); *Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682, 688 (1949). Therefore, the district court properly quashed the subpoenas in dispute here because the United States is not a "person" under 5 U.S.C. § 1782. *See Al Fayed v. Central Intelligence Agency,* 229 F.3d 272, 276-77 (D.C.Cir.2000).

*De Gortari v. U.S. Dept. of Treasury*, 2001 WL 476187, at *1 (D.C. Cir. April 30, 2001); *see, e.g.*, *In re Gushlak*, 2011 WL 3651268, at *7-9 (E.D.N.Y. Aug. 17, 2011) (applying the

longstanding interpretive presumption and denying a Section 1782 application for subpoena directed to a federal prison warden, as it was "effectively an application directed at the United States government"); *McKevitt v. Mueller*, 689 F. Supp. 2d 661, 668 n. 1 (S.D.N.Y. 2010) (explaining in action naming FBI Director Robert Mueller, III, "[t]he Government is not a 'person' under § 1782 and therefore cannot be compelled to provide documents for use in foreign litigation" and citing *Al Fayed* favorably).

This decisional law compels the same result in this case. If the term "whoever" in Section 1084(a) does not include the States or their agencies, then Section 1084(a) does not include state officials or employees who are acting in their official capacities pursuant to valid State law. To hold otherwise would be to find that the term "whoever" in Section 1084(a) does in fact include the States and their agencies, since those sovereign entities can only act through their officials and employees. That result makes no sense and was expressly rejected in *Will*, as permitting easy circumvention of Congressional intent by a mere pleading device, *i.e.*, by substituting out of the operative pleading the "State" or "state agency" as the named party and substituting in one or more "state officials or employees in their official capacities."

So long as the NHLC's officials and employees are acting in their official capacities pursuant to valid State law, and are not acting unconstitutionally[1], they enjoy the State's sovereign status, act as the State, and are not subject to Section 1084(a)'s prohibitions. *See, e.g.*, *Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 696-97 (1982) (plurality) (explaining that the benefits of sovereignty under the Eleventh Amendment do not attach to a state official if a state official is acting beyond his statutory authority or otherwise acting

---

[1] The United States Supreme Court's decision in *Will* hinges on this concept. A state official or employee cannot be deemed to be acting in his or her official capacity if he or she is acting in violation of the United States Constitution. But if the state official or employee is acting constitutionally and pursuant to valid State law, that official or employee functions as the State and partakes in State's sovereign status.

5

unconstitutionally); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 693 (1949) ("Since the sovereign may not be sued, it must also appear that the action to be restrained or directed is not action of the sovereign. The mere allegation that the officer, acting officially, wrongfully holds property to which the plaintiff has title does not meet that requirement. True, it establishes a wrong to the plaintiff. But it does not establish that the officer, in committing that wrong, is not exercising the powers delegated to him by the sovereign. If he is exercising such powers the action is the sovereign's and a suit to enjoin it may not be brought unless the sovereign has consented.").

Thus, if this Court finds that Section 1084(a), by its plain terms, does not extend to the States or their agencies, it must, by logical extension, find that it does not extend to State officials or employees acting in their official capacities pursuant to valid State law and not otherwise in violation of the United States Constitution.

## II. Private Vendors And Agents Who Facilitate A Lawful State Lottery Enterprise Do Not Violate Section 1084's Prohibitions.

Because the NHLC and its officials and employees acting in their official capacities do not fall within Section 1084, private vendors and agents who the State lawfully engages to work for the NHLC's lottery enterprise—e.g., technology vendors, convenience store owners, insurers, banks, ticket printers, attorneys, etc.—must also not fall within Section 1084's prohibitions. Such persons or entities could not be aiders or abettors under 18 U.S.C. § 2(a), because there is no predicate "offense" for which their principal is criminally liable. *United States v. Lyons*, 740 F.3d 702, 715 (1st Cir. 2014) ("An aider and bettor is punishable as a principal if, first, *someone else actually committed the offense* and, second, the aider and abettor 'became associated with the endeavor and took part in it, intending to ensure its success.'") (quoting *United States v. Spinney*, 65 F.3d 231, 235 (1st Cir. 1995)) (emphasis added).

Furthermore, Congress did not intend 18 U.S.C. § 1084 to criminalize lawful State-conducted activity or activity that neither the States nor Congress already deemed to be criminal. *See, e.g.*, *Sterling Suffolk Racecourse Ltd. Partnership v. Burrillville Racing Assoc.*, 989 F. 2d 1266, 1273 (1st Cir. 1993) ("To recapitulate, we think it clear that Congress, in adopting Section 1084, did not intend to criminalize acts that neither the affected states nor Congress itself deemed criminal in nature."); *U.S. v. Southard*, 700 F.2d 1, 20 (1st Cir. 1983) (explaining that the "stated purpose [of Section 1084] was to assist the states in enforcing their own laws against gambling").

Thus, because State-conducted lottery activity is not criminal under 18 U.S.C. § 1084, then those who facilitate it, whether state actors or private vendors, are likewise outside the statutory prohibition. To hold otherwise would leave States without the ability to raise important, needed revenues to fund the operations of State government through the use of State-controlled lotteries. Accordingly, this Court should declare that non-state actors engaged by a lawful State lottery enterprise cannot be among those "whoevers" who could be deemed to violate the Wire Act.

### III. The NHLC Is A Sovereign Agency Of The State Of New Hampshire Entitled To Partake In The Benefits Of Its Sovereign Status.

The argument made for the first time at the April 11, 2019 hearing by the amicus Coalition to Stop Internet Gambling – that if a state agency raises revenue for a State in a particular way, then Congress somehow intended to include that agency within the ambit of the term "whoever" – does not find support in the law. To overcome the longstanding interpretive presumption that the term "whoever" as used in Section 1084 does not include the States, their agencies, and their officials acting in their official capacities, an affirmative showing of statutory intent to the contrary must be made. *Vt. Agency of Natural Resources*, 529 U.S. at 781.

There is no evidence sufficient to overcome the presumption in this case. The text and structure of Section 1084 do not reveal that its prohibitions were meant to extend to the States, their agencies, or their officials acting in their official capacities. Rather, the text of Section 1084(a) reveals a specific definition of the term "State" that is materially different from the definition of "whoever" under 1 U.S.C. § 1. The purpose of Section 1084(a) is to help the States enforce their gambling laws, not to prohibit the States from engaging in State directed, managed, and controlled revenue-raising activities. *Southard*, 700 F.2d at 20 (explaining purpose of Wire Act "was to assist the states in enforcing their own laws against gambling."); *see Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1483 (2018) (stating federal gambling laws, including the Wire Act, comprise a scheme intended to "respect the policy choices of the people of each State on the controversial issue of gambling"). The legislative history reveals Section 1084(a) as a statute designed to address private organized criminal gambling enterprises, not to prohibit the States from engaging in any activity. *See, e.g.*, ECF Doc. #10-9.

Despite this, it has been suggested that by virtue of its decision to raise revenue via lottery gaming, the NHLC's sovereign status is somehow diminished to a level that would permit the Court to find Congressional intent within Section 1084(a) to make the statute applicable to it. That line of argument is inconsistent with the First Circuit's holding in *United States ex rel. Willette v. University of Massachusetts, Worchester*, 812 F.3d 35, 39 (1st Cir. 2016) (hereinafter "*Willette*"), which adopted the Eleventh Amendment "arm of the state" test for determining when a state agency is not a "person" within the meaning of a federal statute.

The First Circuit applies that test as follows: "First, we determine if 'the state has indicated an intention—either explicitly by statute or implicitly through the structure of the entity—that the entity share the state's sovereign immunity.'" *Willette*, 812 F.3d at 39 (quoting

*Redondo Constr. Corp. v. P.R. Highway & Transp. Auth.,* 357 F.3d 124, 126 (1st Cir.2004)). In doing so, the court reviews factors such "as the degree of state control over the entity, the way in which the entity is described and treated by its enabling legislation and other state statutes, how state courts have viewed the entity, the functions performed by the entity, and whether the entity is separately incorporated." *Id.* at 40. "If this structural analysis is conclusive, [the court's] inquiry ends." *Id.* "If, however, this analysis is inconclusive, 'the court must proceed to the second stage and consider whether the state's treasury would be at risk in the event of an adverse judgment.'" *Id.* (quoting *Redondo Constr. Corp.*, 357 F.3d at 126).

In this case, a review of the statutory authority alone demonstrates that the NHLC is an "arm of the state," consistent with the above standard, and therefore there is no need to proceed to the second step of the analysis. Specifically, the NHLC is not separately incorporated; it is a state commission, established by statute, whose members are appointed and may be removed for cause only "by the governor with the advice and consent of the council." RSA 284:21-a. The commission members are salaried by the State, as provided in RSA 94:1-a, III. RSA 284:21-d. The NHLC is required to submit its operating budget to the general court and must submit reports annually 60 days after the close of each fiscal year to the fiscal committee of the general court detailing all transfers made during the last fiscal year and the reasons for them. RSA 284:21-f. The NHLC is obliged to make an annual report to the governor, including therein "an account of its actions, receipts derived under the provisions of this [statutory] subdivision, the practical effects of the application thereof, and any recommendation for legislation which the commission deems advisable." RSA 284:21-g. In other words, the NHLC's disbursements and expenditures are closely monitored by the legislative and executive branches of state government.

The NHLC is authorized by statute "[t]o conduct public drawings at such intervals and in such places within the state as the commission may determine," "[t]o conduct pure lotteries if the commission determines that such program will best accomplish the purpose of [the state lottery statutes]," and "[t]o participate in any international, national, or multistate pure lotteries." RSA 284:21-h, I(a, c-d). "In establishing the money or prizes to be awarded the holders of winning tickets, the lottery commission shall be governed by the primary purpose of the lottery and sweepstakes, *to raise revenue for the benefit of public education*." RSA 284:21-i, III (emphasis added). In doing so, the lottery commission "shall fix the prizes and amounts of money to be awarded winners in such manner as will yield the largest net revenue *for the benefit of public education*, bearing in mind the expenses to be incurred, and all other factors which tend to influence net revenue." *Id.* (emphasis added). Lottery funds must be deposited in commercial banks throughout the state and transferred to the state treasurer on a weekly basis. RSA 284:21-jj.

The NHLC also has limited authority to make contracts for goods and services to support and facilitate the state lottery system. RSA 284:21-hh (authorizing the NHLC to purchase insurance); RSA 284:21-jj (authorizing the NHLC to pay service fees to banks and sales outlets and to enter into agreements with third parties, with the prior approval of the governor and executive council, to pay instant ticket delivery fees). Additionally, as a state commission, the NHLC partakes in the State's sovereign immunity. *See* RSA 541-B:1, I (partial waiver of sovereign immunity in state court for personal injury or property damage and defining the term "agency" to include "all . . . commissions . . . of state government . . . .").

While the question of whether the NHLC functions in a governmental or proprietary capacity may bear some marginal relevance within the multi-factored arm-of-the-state analysis,

the First Circuit has previously held that this factor favored the Massachusetts Lottery Commission because the Commission performed a "revenue-raising function . . . decidedly governmental in nature." *Wojcik v. Mass. State Lottery Commission*, 300 F.3d 92, 99-100 (1st Cir. 2002). The NHLC performs a similar revenue-raising function by raising critical funds to support the state's public education system, a public policy objective expressly identified in its enabling legislation and that is entirely governmental in nature. RSA 284:21-i, III. Thus, this factor favors the sovereign status of the NHLC, contrary to the position expressed at the April 11, 2019 hearing.

In short, the NHLC is closely controlled and supervised by State of New Hampshire. It is not separately incorporated. It performs a critical revenue raising function for public education in the State and is constrained by law in its ability to make disbursements and contracts. The NHLC's enabling legislation overwhelmingly establishes that the NHLC is an arm of the State of New Hampshire. Thus, the NHLC functions as the State, partakes in the State's sovereign status, and, as a result, this "arm of the state" and its officials, employees, and private vendors do not constitute "whoever" under Section 1084 when carrying out the official functions of the NHLC for the State pursuant to valid State law.

## CONCLUSION

Accordingly, for all of the above reasons, and the reasons contained in the NHLC's other briefing in this case, this Court should find and declare that the NHLC and its officials, employees, and private vendors and agents do not constitute "whoever" under 18 U.S.C. § 1084 when working to carry out the official functions of the NHLC for the State of New Hampshire pursuant to valid State law.

Respectfully submitted,

NEW HAMPSHIRE LOTTERY COMMISSION

By its attorney,

GORDON J. MACDONALD
ATTORNEY GENERAL

Date: April 18, 2019          By:   /s/ Anthony J. Galdieri
                                    Anthony J. Galdieri, Bar # 18594
                                    Senior Assistant Attorney General
                                    Francis C. Fredericks, Bar # 21161
                                    Senior Assistant Attorney General
                                    Civil Bureau
                                    New Hampshire Dept. of Justice
                                    33 Capitol Street
                                    Concord, NH 03301
                                    (603) 271-3650
                                    anthony.galdieri@doj.nh.gov
                                    francis.fredericksjr@doj.nh.gov

## Certificate of Service

I hereby certify that a copy of the foregoing was served this 18th day of April, 2019, on all counsel of record, via the ECF System.

/s/ Anthony J. Galdieri
Anthony J. Galdieri