IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| NEW HAMPSHIRE LOTTERY COMMISSION,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>WILLIAM BARR,<br>in his official capacity as Attorney General,<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>　　　　　　Defendants. | Civil Action No. 1:19-cv-00163-PB |
| NEOPOLLARD INTERACTIVE LLC,<br><br>POLLARD BANKNOTE LIMITED,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>WILLIAM P. BARR,<br>in his official capacity as Attorney General of the United States of America,<br><br>THE UNITED STATES DEPARTMENT OF JUSTICE,<br><br>THE UNITED STATES OF AMERICA,<br><br>　　　　　　Defendants. | Civil Action No. 1:19-cv-00170-SM<br>(consolidated) |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM**

　　　The Department of Justice is currently reviewing "whether the Wire Act applies to State lotteries and their vendors," and it will not bring Wire Act prosecutions of state lotteries and their

vendors for the operation of lotteries authorized under state law while that review continues. *See* Memorandum from the Deputy Attorney General, *Notice Regarding Applicability of the Wire Act, 18 U.S.C. § 1084, to State Lotteries and Their Vendors* (Apr. 8, 2019), ECF No. 61-1 Ex. 1. Indeed, Plaintiffs have not pointed to a single Wire Act prosecution of a state lottery, or its employees or vendors, for the operation of a lottery authorized under state law, in the history of the statute. Defendants therefore respectfully maintain that the Court lacks jurisdiction to resolve at this time not only whether the Wire Act reaches beyond sports gambling generally, but also whether the Wire Act could ever be applied to state lotteries and their vendors or employees, as there is no present credible threat of prosecution.

Because there is no credible threat of prosecution, the Court should dismiss this case for lack of standing. The potential Wire Act liability of state agencies, employees, and vendors involves the evaluation of numerous complicated and important issues, and the Department intends to give these issues the deliberate consideration that they deserve. Nonetheless, to avoid any suggestion that the government has forfeited possible defenses in the context of this litigation, Defendants respectfully submit that the New Hampshire Lottery Commission fails to demonstrate its entitlement to a declaratory judgment at this time on the specific theories that it has advanced: that because it falls outside the statutory term "whoever," neither it, nor its employees, nor its vendors, may be prosecuted under the Wire Act. *See generally* ECF No. 68 ("Lottery Commission Supp. Mem."). Defendants express no view at this time as to the viability of other potential theories that the Lottery Commission has not asserted.

## ARGUMENT

The Wire Act applies to "[w]hoever being engaged in the business of betting or wagering knowingly uses a wire communication facility" for certain prohibited purposes. 18 U.S.C. § 1084. Under the Dictionary Act, "unless the context indicates otherwise," the terms "person" and

"whoever" are defined to "include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. The Lottery Commission's arguments fail to demonstrate that it, its employees, or its vendors fall outside the term in this context.

### A. The Lottery Commission Fails To Demonstrate That The Commission Itself Is Not Potentially Subject To The Wire Act.

As a threshold matter, even if the Court were to conclude that there is standing generally, there certainly is not standing over the question whether the Lottery Commission itself could be prosecuted under the Wire Act, as it indisputably has not established a credible threat of prosecution. Indeed, the Lottery Commission has not pointed to a federal prosecution that has ever been brought against a state or a state agency under the Wire Act or any other federal criminal statute.

Nonetheless, if the Court reaches the question whether the Lottery Commission itself could be prosecuted, the Lottery Commission has failed to demonstrate its entitlement to a declaratory judgment at this time. Among other problems, the Lottery Commission fails to adequately address cases providing that the interpretive presumption excluding sovereigns from the definition of "person" is not "a hard and fast rule of exclusion," *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 781 (2000), as well as cases suggesting that sovereigns may fall within the definition of a person when they act in a business capacity, *see, e.g.*, *United States v. California*, 297 U.S. 175, 186 (1936), as well as in other circumstances. It also fails to adequately address cases stating that the omission of sovereigns from the definition of person in the Dictionary Act is "neither controlling nor persuasive," *United States v. Bly*, 510 F.3d 453, 462 (4th Cir. 2007), as well as cases indicating that Congress has generally intended to regulate both state-run and private lotteries, *see United States v. Fabrizio*, 385 U.S. 263 (1966). Thus, while the Department

is currently considering this issue, and still may conclude that states and state agencies are not subject to prosecution under the Wire Act, Plaintiffs cannot obtain a declaratory judgment that states and state agencies are not subject to federal criminal law by simply resting on an inconclusive statutory presumption.

      **B.    The Lottery Commission Fails To Demonstrate That Its Employees Are Not Potentially Subject To The Wire Act.**

Even assuming that the Lottery Commission itself falls outside the Dictionary Act's definition of "whoever" and therefore may not be prosecuted under the Wire Act, the Lottery Commission fails to demonstrate that its employees — who are "individuals" — are similarly excluded. To reach that result, the Lottery Commission relies on a line of cases holding that suits against state employees in their official capacity are functionally identical to suits against the state itself. *See* Lottery Commission Supp. Mem. at 2 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1988)). While there may be other reasons why the employees of the Lottery Commission might not be liable under the Wire Act, the theory that the Lottery Commission has articulated (and that Defendants respond to here) fails.

The distinguishing characteristic of an official-capacity suit is not that the claim arises from the defendant's official action, but rather that the plaintiff (1) chooses to bring his claim against the defendant in his official capacity, and (2) by doing so, attempts to obtain recovery from the state. *See, e.g.*, Erwin Chemerinsky, Federal Jurisdiction § 7.5.2 (6th ed. 2012) ("If the recovery is from the individual officer's pocket, the suit can be said to be against the officer in an 'individual capacity.' If the recovery will be from the state treasury, however, the suit is against the officer in an 'official capacity.'"). In other words, an official-capacity suit "is *not* a suit against the official personally," and "a plaintiff seeking to recover on a damages judgment in an official capacity suit must look to the government entity itself." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In

4

contrast, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Id.* at 165.

Based on that distinction between personal-capacity and official-capacity suits, *Will* holds that suits under 42 U.S.C. § 1983 against state employees in their official capacities are no more permissible than such suits against the state itself, since both would seek relief that runs against the state. *See Will*, 491 U.S. at 71 (the contrary "rule would allow petitioner to circumvent congressional intent by a mere pleading device."). That holding does not mean, however, that state employees are personally immune whenever the claim against them arises from official acts taken in compliance with state law.

To the contrary, in *Hafer v. Melo*, 502 U.S. 21 (1991), the Supreme Court specifically rejected the view that "§ 1983 does not authorize suits against state officers for damages arising from official acts," holding instead that "state officials sued in their individual capacities are 'persons' for purposes of § 1983." *Id.* at 23. In other words, "the phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, *not the capacity in which the officer inflicts the alleged injury*." *Id.* at 26 (emphasis added); *see also, e.g.*, Chemerinsky, *supra*, § 7.5.2 (describing *Hafer*: "The Court explained that a suit is not to be regarded as an official capacity suit simply because the government officer was acting in an official capacity.").

Lest there be any doubt, *Hafer* rejected the argument that "state officials may not be held liable in their personal capacity for actions they take in their official capacity." *Id.* As it explained, it "cannot accept the novel proposition" that the defendant's "official authority insulates [her] from suit." *Id.* at 28. In other words, actions "*within the official's authority and necessary to the performance of governmental functions*" can still give rise to personal liability under Section 1983.

5

*Id.* (emphasis added). The Court reasoned that to hold otherwise would "absolutely immunize state officials from personal liability for acts within their authority and necessary to fulfilling governmental responsibilities," *id.* at 28, and that such absolute immunity has been extended to only a very limited class of officials — the President, legislators carrying out legislative functions, and judges carrying out judicial functions, *id.* at 29 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)).

Under *Hafer*, so long as a plaintiff is seeking personal relief against a state employee, it is irrelevant that the claim arises from actions that the employee took in his official capacity. Indeed, the First Circuit has expressly recognized as much. *See Asociación De Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 26 (1st Cir. 2007) ("If the JUA wishes to seek a personal judgment against Flores Galarza in a ruinous and probably uncollectible amount for actions that he took as the Commonwealth Treasurer to serve the interests of the Commonwealth, they are entitled to do that." (citing *Hafer* and Chemersinky, *supra*)); *Berio-Ramos v. Flores-Garcia*, No. 13-1879, 2015 WL 4548548, at *4 (D.P.R. July 29, 2015) ("The type of liability does not depend on the capacity in which the officer inflicts the alleged injury, but on the capacity in which the state officer is sued." (citing *Flores Galarza*).[1]

---

[1] The same rule properly applies, for example, under the False Claims Act, which applies to "any person" who violates its provisions. *See* 31 U.S.C. § 3729. In particular, although a state is not a "person" for purposes of liability under the FCA, *see Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 780-82 (2000), courts have held that "state employees may be sued in their individual capacities under the FCA for actions taken in the course of their official duties." *Stoner v. Santa Clara County Office of Education*, 502 F.3d 1116, 1125 (9th Cir. 2007); *see also U.S. ex rel. Burlbaw v. Regents of New Mexico State University*, 324 F. Supp. 2d 1209, 1216 (D.N.M. 2004); *U.S. ex rel. Jones v. University of Utah Health Sciences Center*, 2013 WL 5372609 (D. Utah Sept. 24, 2013). *But see, e.g.*, *United States ex rel. Gaudineer & Comito, LLP v. Iowa*, 269 F.3d 932, 937 (8th Cir. 2001).

The Lottery Commission's cases are consistent with this reading of the law: actions seeking relief from the state are official capacity suits, and actions seeking personal relief from the employee are individual capacity suits. At the outset, *Al Fayed v. CIA*, 229 F.3d 272, 273 (D.C. Cir. 2000), involved a request for relief directly against a governmental entity, and did not address the question whether suit could be brought against employees. Plaintiffs' other cases simply reflect the proposition that suits seeking relief from the government are to be treated as suits against the government even when a government employee is named as the nominal defendant. *See De Gortari v. U.S. Dept. of Treasury*, 2001 WL 476187, at *1 (D.C. Cir. April 30, 2001) ("[A] complaint seeking to compel *official action* by a federal official in his or her official capacity is actually a claim against the United States." (emphasis added)); *In re Gushlak*, 2011 WL 3651268, at *7 (E.D.N.Y. Aug. 17, 2011) ("'[A] suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.'") (quoting *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984)); *McKevitt v. Mueller*, 689 F. Supp. 2d 661, 668 n. 1 (S.D.N.Y. 2010) (applying presumption that government is not person in case seeking production of official government documents); *Northeast Fed. Credit Union v. Neves*, 837 F.2d 531, 533 (1st Cir. 1988) ("The ultimate relief obtainable, the depositors' access to the account balances free and clear of the levy, can be obtained only at Maine's expense.").

Individual prosecutions of state employees, whether under the Wire Act or any other statute, would not seek relief from the state treasury, nor would they seek to enjoin or restrain any state action. Rather, criminal prosecutions are brought against specific criminal defendants (whether individuals or entities) and seek to impose criminal penalties upon that defendant.

7

Plaintiffs have articulated no theory of why a prosecution brought directly against an individual would actually be a suit against the sovereign. While it is possible that such prosecutions might lead the state to change its behavior as a practical matter, that is not enough to show that the suit in fact seeks relief from the sovereign. Personal-capacity damages actions, of course, can have the same effect. Indeed, state law sometimes even provides that states will indemnify their employees for damages actions brought against them in their personal capacities for their official acts, but such voluntary action on the part of the state does not convert a suit from a personal-capacity suit to an official-capacity suit. *See* Chemerinsky, *supra*, § 7.5.2 ("[A]n officer of the state cannot claim Eleventh Amendment immunity on the grounds that state law requires that the officer be indemnified with funds from the state treasury.").

The Lottery Commission's sovereign immunity cases do not counsel otherwise. *See* Lottery Commission Supp. Mem. at 5-6 (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 693 (1949) and *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670 (1982) (plurality opinion)). Notwithstanding the Lottery Commission's quotation of ambiguous statements and plurality opinions, it is hornbook law that the Eleventh Amendment is no obstacle to federal lawsuits against state officers seeking either (1) damages in their personal capacity for their official acts, as made clear by *Hafer*, or (2) prospective injunctive relief, as made clear by *Ex parte Young*, 209 U.S. 123 (1908). *See* Chemerinsky, *supra*, § 7.5.2 ("[I]f the suit against a state officer is for injunctive relief, under *Ex parte Young* as reaffirmed in *Will*, there is no Eleventh Amendment bar to federal court jurisdiction. Likewise, if the suit is against an officer for money damages when the relief would come from the officer's own pocket, there is no Eleventh Amendment bar even though the conduct was part of the officer's official duties.").

It bears underscoring that the Lottery Commission's theory is not only unsupported by case law — it would dramatically alter the ordinary relationship between federal and state law. Distilled to its essence, the Lottery Commission's theory is that so long as a state employee violates federal criminal law at the direction of state law, the United States may not act against either the state or the state employee under any of the myriad federal laws that use general terms like "whoever" or "person" but do not expressly include states. Such a theory would lead to extraordinary results. To take one example, if New Hampshire came to disagree with the Federal Reserve's monetary policy, it could set up a State Currency Commission dedicated to printing counterfeit U.S. currency, and the Department of Justice could not bring prosecutions against anyone involved under the federal counterfeiting laws, which apply to "whoever." *See* 18 U.S.C. § 471. Or if New Hampshire disagreed with the government's drug policies, it could create a State Narcotics Commission that handed out heroin to every citizen in New Hampshire, and the federal government would again be unable to indict anyone involved under the Controlled Substances Act, since its prohibitions apply to "any person." *See* 21 U.S.C. § 841(a). It is utterly implausible to think that Congress would have written the federal criminal laws in this way, which runs contrary to the normal rule, expressed in the Supremacy Clause, that federal law is the "supreme law of the land." U.S. Const. Art. VI, par. 2.

The Lottery Commission's theory is also in tension with the history of federal lottery regulation. As the Lottery Commission has observed, certain statutes governing lotteries make exceptions when the lottery in question is conducted by a state. *See, e.g.*, 18 U.S.C. § 1307(a)-(a)(1) ("The provisions of sections 1301, 1302, 1303, and 1304 shall not apply to . . . an advertisement, list of prizes, or other information concerning a lottery conducted by a State acting under the authority of State law."). Yet if all acts related to the operation of a lawful state lottery

9

were outside the scope of such statutes, Congress would have had no need to carve out an exception for lotteries conducted by states.[2]

### C. The Lottery Commission Fails To Demonstrate That Its Vendors Are Not Potentially Subject To The Wire Act.

The Lottery Commission similarly fails to demonstrate that its vendors are categorically immune from Wire Act prosecution. To the contrary, vendor liability would follow *a fortiori* from employee liability. The Lottery Commission suggests that such companies "could not be aiders and abettors" because "there is no predicate 'offense' for which their principal is criminally liable," Lottery Commission Supp. Mem. at 6, but the Lottery Commission articulates no theory for why vendors could not be liable as principals. Plaintiffs offer the tautology that Congress did not intend to criminalize action that it did not intend to criminalize, *see id.* at 7, but that provides no reason to suppose that a state's vendors are uniquely immune from criminal prosecution.

## CONCLUSION

The Lottery Commission has not demonstrated its entitlement to a declaratory judgment that it, its employees, or its vendors are categorically immune from prosecution under the Wire Act.

---

[2] Plaintiffs appear to have previously suggested that these same provisions show that Congress carved out state lotteries from the Wire Act, but they have not demonstrated their entitlement to a declaratory judgment on that point. 18 U.S.C. § 1307 is by its own terms a limit on the "[t]he provisions of section 1301, 1302, 1303, and 1304"; it does not explicitly limit the reach of 18 U.S.C. § 1084. As for 18 U.S.C. § 1301, that provision contains a general prohibition on the interstate transmission of lottery tickets, subject to an exception if "that business is permitted under an agreement between the States in question." 18 U.S.C. § 1301. That exception also does not explicitly apply beyond the prohibition contained in that statutory section, nor does the exception explicitly authorize transmissions over the interstate wires.

Dated: April 25, 2019                                Respectfully submitted,

                                                            HASHIM M. MOOPPAN
                                                            Deputy Assistant Attorney General

                                                            MATTHEW J. GLOVER
                                                            Counsel to the Assistant Attorney General

                                                            JOHN R. TYLER
                                                            Assistant Director, Federal Programs Branch

                                                            <u>/s/ *Steven A. Myers*</u>
                                                            STEVEN A. MYERS (NY Bar No. 4823043)
                                                            Trial Attorney
                                                            Federal Programs Branch
                                                            U.S. Department of Justice, Civil Division
                                                            1100 L St. NW
                                                            Washington, DC 20005
                                                            Telephone: (202) 305-8648
                                                            Fax: (202) 616-8470
                                                            Email: Steven.A.Myers@usdoj.gov

                                                            *Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I certify that, on April 25, 2019, I served the foregoing via ECF electronic transmission in accordance with the Court's Administrative Procedures for ECF to the registered participants as identified on the Notice of Electronic Filing.

Dated:   April 25, 2019                 /s/ Steven A. Myers
                                           Steven A. Myers