# EXHIBIT B

Vol.  1

# The United States Senate

---

## Report of Proceedings

---

## Hearing held before

Committee on the Judiciary

EXECUTIVE SESSION

---

Monday, July 10, 1961

Washington, D. C.

---

## WARD & PAUL

1760 PENNSYLVANIA AVE., N. W.
WASHINGTON, D. C.

---

NATIONAL ⎰ 8-4266
⎱ 8-4267
⎰ 8-4268
⎱ 8-4269

# C O N T E N T S

## NOMINATIONS

NOMINATION OF:                                           PAGE

Bernard J. Brown of Pennsylvania to be
United States Attorney for the Middle
District of Pennsylvania.                                  2

David M. Satz, Jr., of New Jersey to be
United States Attorney for the District
of New Jersey.                                             2

Forrest F. Walker of Virginia to be
United States Marshal for the Eastern
District of Virginia                                       2

GENERAL

S. 1657                                                    5

STATEMENT OF:

The Honorable Robert F. Kennedy,
      Attorney General of the United States,
      Accompanied by:
Byron R. White,
      Deputy Attorney General and
Herbert J. Miller, Jr.,
      Assistant Attorney General                           6

                  S. 1653                                  23

                  S. 1654                                  43

                  S. 1656

PAGE NUMBERS AT WHICH MATERIAL IS TO BE INSERTED:

6, 23, 43, 53

EXECUTIVE SESSION

- - - - - -

Monday, July 10, 1961

United States Senate,

Committee on the Judiciary,

Washington, D.C.

The Committee met, pursuant to notice, at 10:30 a.m., in Room 2228, Senate Office Building, Senator James O. Eastland (Chairman) presiding.

Present: Senators Eastland (presiding), Kefauver, Johnston, McClellan, Ervin, Carroll, Hart, Dirksen, Hruska, Keating and Cotton.

Also present: Francis C. Rosenberger, Member, Professional Staff.

- - -

## S. 1656

Mr. Rosenberger. S. 1656 is the next bill.

(S. 1656 referred to is as follows:)

COMMITTEE INSERT

Mr. Rosenberger. This bill, S. 1656, adds a new
section. Under the new list of bills, it is the second.

Senator Keating. Appendix A, did you say?

Mr. Rosenberger. Appendix B.

The language which is omitted from the bill in printed
form is, "Whoever leases, furnishes, or maintains any wire
communication facility" and so on, which appears in lines
15 through 20 in the mimeographed sheet, and the new
language is "Whoever being engaged in the business of
betting or wagering knowingly uses a wire communication
facility for the transmission in interstate or foreign com-
merce of bets or wagers or information assisting in the
placing of bets or wagers on any sporting event or contest,
or for the transmission of a wire communication which
entitles the recipients to receive money or credit as a
result of bets or wagers, or for information assisting
in the placing of bets or wagers --"

Senator Kefauver. That would cover Western Union.

Mr. Kennedy. Yes.

Mr. Rosenberger. Then you add a new Section 4, which
begins on line 39 of page 2 and runs to the end of the copy.

Mr. White. After discussion and hearings, there being
noted that there was considerable sentiment that there should
be further discussion before the telephone company itself
or the telegraph company was subjected to a liability, we had

eliminated from the criminal penalty the telephone company
or the company that furnishes. It is aimed now at those
who use the wire communication facility for the transmission
of bets or wagers in connection with a sporting event and
also who use the facility for the transmission of the
winnings, as suggested by Senator Kefauver.

Then in Section 4, we provide that the telephone company,
after notice from a law enforcement agency, can terminate
the telephone service, in which event, the company is
immunized from suit.

Senator Keating. In other words, it places the burden
on the law enforcement agency rathen than the utility?

Mr. White. We are indebted to Senator Keating for this
approach on the matter.

Senator Hruska. Well, now, this whole subject was
canvassed way back in 1954 in the testimony of John Hanselman
for the American Telephone and Telegraph Company. He refers
there to the bill which was approved by the Senate and by
the Interstate and Foreign Commerce Committee. I guess it
is Senate 3542 way back there.

Does this bill, as you have amended it, substantially
incorporate the substance of what was in that 1954 bill?

Mr. White. I am afraid I do not know that.

Senator Keating. May I answer that? I am not sure --
I cannot answer that question, but I can say this, that the

position of Mr. Hanselman and others, representing various
telephone companies, was that they should not have the
burden of determining whether a line is being used for
criminal purposes. That burden should rest upon a law
enforcement agency. They should only become liable when a
law enforcement agency said to them "This line is being
used illegally, you stop it."

Then if they did not stop it, they should be liable.
As it is now, they cannot shut off a fellow's service, and
under the original wording, they would be stuck if it were
used illegally. I think this language used here at the
end probably meets that objection.

My impression would be that this would be unobjectionable
to them.

Senator Kefauver. Senator Hruska, the bills in 1954
grew out of the recommendation of the Senate Crime Committee.
We had two approaches to the matter. At that time, we had
found that there was a nation-wide wire service, the
Continental Press Service, so-called. So we had one bill
that would require the FCC to deny the application of any
applicant for interstate service if a major portion of his
business was going to be the transmission of illegal
information.

Then we had another bill which is very similar to this
one. Senator Johnston and the members of the Interstate

7

Commerce Committee decided on this penalty approach. So
this is very much the same as the bill in 1954, which I
think passed the Senate.

Senator Hruska. It did pass the Senate, but got stalled
in the House.

Senator Keating. Let me ask the Attorney General, in
his appendix on page 3, line 51, there is a word wrong
there, is there not? Is that not "to secure appropriate
materials"?

Mr. Kennedy. That is right.

Senator Kefauver. The legislative history, this
"after notice to the subscriber," this is to give notice to
the subscriber if he feels he is aggrieved or being
wrongfully --

Senator Hruska. I should like the opportunity to
check with representatives of that independent telephone
association and these people. If it was designed to meet
that situation, Mr. Attorney General, I have an idea all
the component elements are in here. If they have some sug-
gestions, I should like to transmit them.

Senator Kefauver. Senator Hruska, the Bell System
filed a statement in which they asked this exemption out-
right which was contained here. The general or the inde-
pendent telephone people had some other approach. But in the
colloquy they said they would prefer outright exemption,

Reproduced at the National Archives