UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

=====================================
NEW HAMPSHIRE LOTTERY COMMISSION,

NEOPOLLARD INTERACTIVE LLC, *and*

POLLARD BANKNOTE LIMITED,

    *Plaintiffs*,

  v.

WILLIAM P. BARR, in his official capacity as
Attorney General of the United States,

UNITED STATES DEPARTMENT OF JUSTICE,

AND UNITED STATES OF AMERICA,

    *Defendants*.
=====================================

Civil Action No. 1:19-cv-00163-PB

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO INTERVENE

The Coalition to Stop Internet Gambling (CSIG) and the National Association of Convenience Stores (NACS) respectfully submit this Memorandum of Law in support of their Motion to Intervene. When CSIG and NACS successfully moved to participate as amici in this case, they reserved the right "to move to intervene at a later stage of the proceedings (including any appeal) should circumstances warrant intervention." Doc. 53 at 2. They did so in line with this Court's suggestion that it would "revisit the matter of intervention" if "at a later stage" the parties were "not adequately representing the interests of" amici. Doc. 24 at 10. That moment has now arrived. Because Defendants have declined to take a firm position on whether the Wire Act's "whoever" language applies to Plaintiffs—despite this Court's repeated and express invitation for

1

Defendants to do so—the calculus regarding intervention has significantly changed. Were this Court or the Court of Appeals to conclude that the Wire Act does not apply to Plaintiffs because of the "whoever" language, Plaintiffs would be entitled to entry of judgment. Yet only CSIG and NACS, as amici, have offered arguments on the "whoever" issue in opposition to Plaintiffs. Accordingly, Defendants do not adequately represent the interests of CSIG and NACS, and amicus status is thus insufficient to protect their interests moving forward. To ensure that this potentially outcome-determinative issue is fully briefed and carefully considered in future proceedings, this Court should grant CSIG and NACS's motion to intervene.

## ARGUMENT

Federal Rule of Civil Procedure 24 establishes two forms of intervention: intervention of right under Rule 24(a) and permissive intervention under Rule 24(b). Both types of intervention justify granting CSIG and NACS's motion.

### A. Intervention of Right

"On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a).

> To succeed on a motion to intervene as of right, a putative intervenor must establish (i) the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede its ability to protect that

2

interest; and (iv) the lack of adequate representation of its position by any existing party.

*R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009). All four criteria are met here.

First, this motion is timely. CSIG and NACS have moved to intervene less than a month after Defendants filed their supplemental brief declining to take a firm position on the scope of the "whoever" language. *See* Doc. 70. The First Circuit has held that intervention motions filed within a month after the critical event are timely. *See Negron-Almeda v. Santiago*, 528 F.3d 15, 25 (1st Cir. 2008); *Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 65 (1st Cir. 2008). Moreover, there would be no prejudice to any existing party or to the pace of the Court's proceedings. Once granted intervenor status, CSIG and NACS do not intend to seek any relief other than the attached motion to dismiss or for summary judgment, which requires no additional briefing or argument beyond what has already been filed with this Court. This Court can grant this motion without in any way delaying its adjudication of the pending cross-motions for summary judgment.

Second, as this Court recognized in adjudicating iDevelopment's intervention motion, "there is no question" that trade associations whose members are affected by the interpretation of the Wire Act have an interest in this litigation. Doc. 24 at 5–6. Indeed, NACS's interest in this case even meets the threshold of Article III standing.[1] As outlined in the attached Declaration of Lyle Beckwith, NACS has members that sell physical lottery tickets in New Hampshire. Beckwith Decl.

---

[1] Assuming Plaintiffs have Article III standing, there is jurisdiction over this case, and CSIG and NACS need not demonstrate Article III standing at this stage, *see Laroe Estates, Inc. v. Town of Chester*, 828 F.3d 60, 64 (2d Cir. 2016), *vacated and remanded on other grounds by* 137 S. Ct. 1645 (2017), since they are not seeking any form of relief beyond what the parties themselves seek, *see Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). At the very least, "[t]he traditional rule [i]s that standing [i]s required for permissive intervenors but not for intervenors of right." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 61 (1st Cir. 2003). In any event, CSIG and NACS have standing.

¶ 2. New Hampshire's iLottery system, which facilitates the online purchase of lottery tickets in violation of the Wire Act, has significantly harmed the economic interests of NACS members, who must compete for sales with New Hampshire's online offerings. *Id.* ¶ 3. NACS members have therefore been injured in a concrete and particularized way by Plaintiffs' continued illegal actions, and that injury could be redressed by entry of judgment in favor of Proposed Defendants-Intervenors holding that the Wire Act prohibits Plaintiffs' conduct.

Third, for the same reason, there is a realistic threat that disposition in favor of Plaintiffs will impede CSIG and NACS's ability to protect their interests. The whole point of Plaintiffs' declaratory judgment action, in their view, is to provide "certainty," "a definitive interpretation of the Wire Act so [they] can know whether [they] can continue in business or not." Transcript of Oral Argument Before the Honorable Paul J. Barbadoro, Afternoon Session at 8:18–20 (April 11, 2019). If Plaintiffs prevail in this case, they will be entitled to continue operating iLottery without threat of prosecution from the United States, to the continued detriment of NACS's New Hampshire-based members.

Finally, it is now clear, if it was not before, that Defendants do not adequately represent the interests of CSIG and NACS. Whether the Wire Act applies to Plaintiffs under the "whoever" language is a threshold question of Plaintiffs' liability under the Act, regardless of how one interprets the scope of the Wire Act's substantive prohibition. If the Wire Act does not apply to New Hampshire, its employees, and its vendors, Plaintiffs would be entitled to judgment, yet Defendants have offered *no affirmative argument* on the merits of that potentially dispositive question. Instead, Defendants merely point out problems with New Hampshire's argument while expressly reserving the right to eventually agree with New Hampshire. *See* Doc. 70 at 4 (Defendants "may conclude that states and state agencies are not subject to prosecution under the

Wire Act"). Defendants might very well have sound institutional reasons for refusing to take a position on the "whoever" argument; indeed, how this issue is resolved could affect whether the United States is understood to be included within the definition of "whoever" as that term is used in a variety of other statutes. Nevertheless, Defendants' decision not to take a firm position has left New Hampshire's argument largely unrebutted by any party. Instead, it has fallen to CSIG and NACS to make the case that the Wire Act fully applies to Plaintiffs. *See* Doc. 75. Because CSIG and NACS are already effectively functioning as defendants in this case on this potentially dispositive issue, this Court should formalize that reality by granting them intervenor status.

Amicus status is simply insufficient to protect CSIG and NACS's interests moving forward. While this Court allowed CSIG and NACS, as amici, to offer arguments on the "whoever" issue in briefing and at oral argument, nothing requires the Court of Appeals to do so, and nothing requires the Court of Appeals to give those arguments the same attention that this Court has. Consider, for example, what would happen if this Court were to enter judgment for Plaintiffs based on the "whoever" argument, and on appeal, Defendants relied solely on their jurisdictional arguments as the basis for reversal, while continuing to refuse to take a definitive position on the merits of the "whoever" issue. If CSIG and NACS only had amicus status, the First Circuit would have no obligation to consider—much less address—their arguments for why the Wire Act applies to Plaintiffs under the "whoever" language. *See Aroostook Band of Micmacs v. Ryan*, 484 F.3d 41, 51 n.11 (1st Cir. 2007) ("we are not obligated to consider points raised only by an amicus"). The First Circuit could therefore affirm this Court's judgment without even engaging with a dispositive issue on the merits, thereby substantially prejudicing CSIG and NACS.

Likewise, if this Court entered judgment *for Defendants*, the same result could occur. On appeal, if Defendants offered no affirmative argument in response to New Hampshire's argument

that Plaintiffs are not covered by the Wire Act under the "whoever" language, the First Circuit would have no obligation to consider CSIG and NACS's arguments, and could reverse and direct that judgment be entered in Plaintiffs' favor on the basis of the "whoever" argument without addressing the counterarguments. *See id.*

This is not a situation where amici merely offer *additional* arguments in favor of a position already defended by a party; it is a situation where amici are the *only* entities taking a firm position on one side of a decisive merits question. The only way to ensure that the Court of Appeals (and, potentially, the Supreme Court) receives vigorous and sustained argumentation on the "whoever" issue—an issue that, it bears repeating, is potentially dispositive—is to grant CSIG and NACS intervenor status. Anything less would leave CSIG and NACS without adequate representation and threaten their interests. *See Geiger*, 521 F.3d at 65 (affirming grant of Rule 24(a) motion to intervene and holding that original defendant was not adequately representing intervenor's interests by refusing to defend a key position in the litigation).

### B. Permissive Intervention

Even where intervention of right is denied under Rule 24(a), Rule 24(b) "gives the judge discretion to allow intervention 'when an applicant's claim or defense and the main action have a question of law or fact in common.' . . . [T]he district court can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion." *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 112–13 (1st Cir. 1999).[2] For the same reasons discussed above, even if intervention of right is not required under Rule 24(a), it should certainly be *permitted* as an exercise of this Court's discretion under Rule 24(b).

---

[2] An independent basis for statutory jurisdiction exists under 28 U.S.C. § 1331. *See International Paper Co. v. Inhabitants of Town of Jay*, 887 F.2d 338, 346 (1st Cir. 1989).

Obviously, there are common questions of law and fact between CSIG and NACS's defense of DOJ's 2018 Wire Act interpretation and the issues raised by the parties. There would be no delay in adjudicating this case by permitting CSIG and NACS to intervene, since they seek no additional briefing on the cross-motions for summary judgment. And Defendants do not adequately represent CSIG and NACS's interests because they refuse to take a firm position on a potentially dispositive issue on the merits, leaving only CSIG and NACS to take up the defense of the Wire Act's application to Plaintiffs. Intervention is therefore justified.

## CONCLUSION

Proposed Defendants-Intervenors CSIG and NACS respectfully request that this Court grant their Motion to Intervene.

Dated:  May 23, 2019                                                       Respectfully submitted,

                                                                           /s/ Michael J. Tierney
Charles J. Cooper*                                                         Michael J. Tierney, NH Bar #17173
David H. Thompson*                                                         WADLEIGH, STARR & PETERS, PLLC
Brian W. Barnes*                                                           95 Market Street
J. Joel Alicea*                                                            Manchester, NH 03101
Nicole Frazer Reaves*                                                      (603) 206-7239
COOPER & KIRK, PLLC                                                        (603) 669-6018 (fax)
1523 New Hampshire Avenue, N.W.                                            mtierney@wadleighlaw.com
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
ccooper@cooperkirk.com
* Appearing *pro hac vice*

*Counsel for Proposed Defendants-Intervenors*
*Coalition to Stop Internet Gambling and*
*National Association of Convenience Stores*